

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAWANZA ALEXANDER,

      Plaintiff,

v.

CO DOE [1], CO DOE [2],
INTAKE NURSE, DOCTOR DOE,
ERIE COUNTY,

      Defendants.
_____

23-CV-6168-FPG
DECISION AND ORDER

## INTRODUCTION

*Pro se* Plaintiff, Dawanza Alexander, is a prisoner confined at the Orleans Correctional Facility ("Orleans"). He filed a Complaint asserting a claim pursuant to 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to his serious medical needs. ECF No. 1. He also submitted an application to proceed *in forma pauperis* with a signed authorization. ECF No. 2. The Court granted Plaintiff's request to proceed *in forma pauperis* and screened his complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. The Court concluded that the Complaint failed to state any claim and granted Plaintiff leave to file an amended complaint as directed in its order. *See* ECF No. 3 (the initial screening order).

Plaintiff timely filed an amended complaint, ECF No. 6, which the Court now screens pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. For the reasons set forth below, Plaintiff's Eighth Amendment deliberate indifference claim will proceed to service upon CO Doe [1] and CO Doe [2]; all other claims are dismissed.

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2).

### I.   THE COMPLAINT

In evaluating a complaint, the court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

The allegations in Plaintiff's Amended Complaint mirror the allegations in his Complaint, with three substantive changes: (1) Plaintiff amends the caption, removing several Defendants and

adding Erie County (ECF No. 6 at 1); (2) Plaintiff now alleges that he "pleaded with" the Defendant CO Does to allow him to carry his medication during transport, "stress[ing] the importance of [Plaintiff's] holding on to the medication," and asked CO Doe 2 to show him that his medication had been placed in the medical bag, but CO Doe 2 refused (*id.* at 10-11, 15); (3) Plaintiff contends that Defendant Intake Nurse intentionally delayed delivery of medical care because Erie County Medical Center ("ECMC") has a custom of prioritizing patients from the general public over patients from the state prisons (*id.* at 17).

## II. SECTION 1983 CLAIM: EIGHTH AMENDMENT

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

### A. Inadequate Medical Care

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs when they failed to provide him with medications prescribed by a cardiologist and failed to provide adequate treatment for his serious heart condition. For medical care to be so inadequate as to amount to the "cruel or unusual punishment" prohibited by the Eighth Amendment, Plaintiff must prove that the Defendants' actions or omissions amounted to "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As the Supreme Court explained in

*Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991), this standard includes both an objective and subjective component.

As set forth in the initial screening order, Plaintiff's description of his chest pain and heart condition are sufficient to satisfy the objective component (a serious medical need) at this early stage of the proceedings. ECF No. 3 at 6-7. The Court dismissed this claim because Plaintiff did not plausibly allege the subjective prong (deliberate indifference) and apprised Plaintiff that an amended complaint must show that the defendant knew Plaintiff had a heart condition or was at a substantial risk of having a heart attack and acted or failed to act with a sufficiently culpable mental state; crucially, Plaintiff's allegations must show more than negligence. *Id.* at 8-9.

### 1. Correction Officer Doe Defendants

Accepted as true, Plaintiff alleges that he was authorized to "self carry" certain medication. ECF No. 6 at 10, ¶ 10. A cardiologist prescribed the medication "to help keep the stents open in [Plaintiff's] arteries." *Id.*

In preparation for a transfer from Five Points Correctional Facility to Orleans, Plaintiff was "directed to bring his self carry medication with him." *Id.*, ¶ 11. The day of the transfer, October 28, 2022, Plaintiff brought his medication as directed and, over his objection, "was told to turn over the medication." *Id.*, ¶ 12. CO Doe [1] "was aware of the seriousness of having the heart medication. The Plaintiff not only informed [CO Doe [1]] of the medication, [he also] pleaded with him to allow [Plaintiff] to hold onto the medication." ECF No. 6 at 15, ¶ 39. Plaintiff "did not see CO [1] give the medication to the transporting officer or 'put it in the med bag.'" *Id.* at 10, ¶ 12. "Plaintiff raised an objection, and expressed his concerns over the medication. CO Doe [2] stated, 'do not worry about it, we have the medication.'" *Id.*

> Plaintiff further inquired into the whereabouts of the medication [and] attempted to pressure CO Doe [2] whether he could hold on to his medication because the

4

> Plaintiff informed him that he was nervous about knowing that his medication was secured. The officer was dismissive of the Plaintiff and disregarded the Plaintiff['s] request. The Plaintiff again requested to hold on to the medication, and further stated, "that he feels at ease if he could hold on to his medication.["] CO Doe [2] forcefully stated, and made it clear that the Plaintiff could not posses[s] the medication.
>
> Plaintiff again further stated, "could he at least show him the medicine.["] The mere fact that plaintiff was afraid that his medication was not in the bag had an overwhelming negative impact on him, and caused a great deal of stress. Nevertheless . . . CO Doe [2] stated, "if you keep bothering me I shall write you up.["]

*Id.* at 10-11, ¶¶ 13-14. When Plaintiff arrived at Orleans, his medication was not in the bag. *Id.* at 11, ¶ 15.

Because his medication did not travel with him, post-transfer, Plaintiff ended up in the hospital with severe chest pain. *Id.* at 11, ¶¶ 17-18. He then had heart surgery, after which, the surgeon told him that "due to the long period of time without the medication [Plaintiff's] arteries had in fact closed and there was nothing further [that could be done]." *Id.* at 14, ¶¶ 33-34.

Deliberate indifference requires allegations which show "that the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Applying this standard, Plaintiff's allegations plausibly allege CO Doe [1]'s deliberate indifference and warrant an answer. The Amended Complaint shows that CO Doe [1] was aware of the seriousness of Plaintiff's medical condition, that Plaintiff needed his heart medication, and knowing this, took Plaintiff's heart medication from him but did not ensure it was secured for transport. CO Doe [2] is a closer call. Although Plaintiff's allegations show that he expressed his concern to CO Doe [2] that his medication travel with him and that CO Doe [2] was aware of Plaintiff's concern, the allegations are not clear as to whether he told CO Doe [2] before transfer or after arriving at Orleans that "the lack of medication can cause pain or even can be fatal." *See* ECF No. 6 at 11, ¶ 16. However,

5

because the allegations permit an inference that CO Doe [2] was aware of the importance that Plaintiff's prescription medication arrive with him at Orleans and CO Doe [2] did not ensure that medication was transferred to Orleans, the Court finds the allegations are sufficient to warrant an answer from CO Doe [2].

### 2. ECMC Intake Nurse and Doctor Doe Defendants

Because his medication did not arrive with him at Orleans, Plaintiff did not receive any doses and two days later experienced chest pain so severe he was transported to hospital—first to Medina, then ECMC. ECF No. 6 at 11. Upon his arrival at ECMC, Defendant Intake Nurse ("Intake Nurse") received a list of Plaintiff's prescribed medications. *Id.* at 12, ¶ 19. Plaintiff told Intake Nurse he believed his chest pain was due to not receiving his medication. *Id.* Armed with that information, Intake Nurse did not give Plaintiff his medication, even though he "repeatedly requested his medication and to be seen by a doctor." *Id.*, ¶¶ 19-21. More than ten hours later, Plaintiff received "a dose of 'nitro' and his pain began to decrease." *Id.*, ¶ 22.

Dr. Doe, "the treating doctor on call," knew: (1) Plaintiff had a heart attack, (2) was waiting to be treated, and (3) had not received any medication for his heart condition. *Id.*, ¶ 23. Dr. Doe ordered a stress test, which caused Plaintiff's heart "to beat at a very rapid pace" and the pain was unbearable—Plaintiff felt as if he was going to die. *Id.* at 14, ¶¶ 31-32. "On November 3, 2022, Plaintiff was transferred to Buffalo General Hospital for surgery." *Id.*, ¶ 33. By this time, the lack of the prescribed medication had caused the stents to close, "cut[ting] off all and any blood flow to the heart." *Id.*, ¶ 35.

As observed by the Court in the initial screening order, merely alleging that Intake Nurse and Dr. Doe work at ECMC is not sufficient to allege state action. *See* ECF No. 3 at 9 n.1, n.2. As noted in that order, physicians with admitting privileges and individuals working on a contract

basis are generally not state actors for the purpose of § 1983. *See id.* Despite being apprised that he would need to plead additional facts to plausibly allege that an ECMC physician is a state actor, Plaintiff made no attempt to do so in his Amended Complaint. Even assuming Plaintiff could show that Intake Nurse and Dr. Doe are state actors, he does not allege their deliberate indifference.

Plaintiff first contends Intake Nurse and Dr. Doe were deliberately indifferent to his serious medical need when they delayed giving him medical care for ten hours after his arrival at ECMC. Although a delay in the delivery of medical care paired with a negative outcome can support a claim for inadequate medical care, *see, e.g., Melvin v. County of Westchester*, No. 14 -CV -2995 (KMK), 2016 WL 1254394, at *5 (S.D.N.Y. Mar. 29, 2016), Plaintiff's allegations regarding his ten-hour wait at ECMC do not support his claim. Plaintiff alleges that "due to the long period of time without medication . . . the arteries had completely collapsed encasing the stents in the flesh, like a cocoon, which cuts off all and any blood flow to the heart." ECF No. 6 at 14, ¶¶ 34-35. Plaintiff contends that he did not receive any doses of the medication from approximately October 28, 2022, through November 3, 2022. *Id.* at 10, ¶ 12; 11, ¶¶ 17-18; 14, ¶ 33. On these facts, the Court cannot infer that Plaintiff's arteries closed during the ten-hours he waited for care at ECMC as opposed to at some other point during the seven-or-so days[1] Plaintiff did not receive his medication. Moreover, there is nothing in the amended complaint that indicates that Plaintiff's injury could have been avoided had he received care during the ten-hours he waited at ECMC. *See Amaker v. Coombe*, No. 96 CIV. 1622 (JGK), 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002) (a prisoner's Eighth Amendment rights are violated only where "the delay reflects deliberate

---

[1] Plaintiff alleges: (1) he transferred to Orleans on October 28, 2022, but his medication was not transferred with him; (2) on October 30, 2022, after not receiving his medication since his arrival at Orleans, he experienced chest pain and was taken to the "medical area" at Orleans, then transferred by paramedics to Medina hospital, and "later transferred" to ECMC; (3) and on November 3, 2022, he was transferred from ECMC to Buffalo General Hospital. *See* Docket Item 6 at 10, ¶ 12; 11, ¶¶ 17-18; 14, ¶ 33.

7

indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment").

Plaintiff next contends that Intake Nurse delayed his medical care because he is a prisoner. But Plaintiff's subjective belief is not supported with facts that would allow the Court to make that inference. Additionally, Plaintiff's allegations also do not suggest that Intake Nurse acted with "culpable recklessness as opposed to mere negligence." *See Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (summary order) (affirming dismissal where the plaintiff did not "indicate that the nurse was actually aware that his injuries were so severe as to require immediate medical treatment and that she consciously disregarded the risk of delaying such treatment"). Accordingly, Plaintiff's claim against Intake Nurse is dismissed.

Regarding Dr. Doe, Plaintiff alleges that "paramedics provided a list of plaintiff's prescribed medication to the intake nurse at ECMC." ECF No. 6 at 12, ¶ 19. Dr. Doe, "the treating doctor on call," knew that Plaintiff had had a heart attack and that he had not received any medication for his heart condition. *Id.*, ¶ 23. Despite being informed of Plaintiff's prescribed medications, Dr. Doe did not order or administer the medication. Because he did not receive his medication, Plaintiff's arteries closed and nothing can be done to repair the damage. *Id.* at 14, ¶¶ 33-34; 16, ¶ 42. Dr. Doe did order a diagnostic "stress test" that Plaintiff found painful, and also ordered medication ("nitro") that helped relieve Plaintiff's symptoms. The Amended Complaint contains nothing to indicate that the stress test caused Plaintiff's injury. That is, Plaintiff alleges only that the test was painful, not that it caused his arteries to close.

Even though it might be argued that the treatment given did not turn out to be adequate, i.e., the arteries collapsed encasing the stents, the allegations do not suggest Dr. Doe's deliberate

indifference to Plaintiff's serious medical need. At most, if proven, Dr. Doe's failure to recognize the medical necessity of Plaintiff's stent medication may constitute medical malpractice. "[A] [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.*, involves the "unnecessary and wanton infliction of pain," *id.* at 105, or is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society,'" *id.* at 102. Accordingly, the claim against Dr. Doe is dismissed.

The Court previously apprised Plaintiff of the elements required to plead an inadequate medical care claim and pointed out the deficiencies in his pleading, including specificity with respect to the deliberate indifference element, therefore, dismissal of the claims against Intake Nurse and Dr. Doe is without leave to amend. *Williams v. Baxter*, No. 22-CV-6117-EAW, 2023 WL 5584345, at *3 (W.D.N.Y. Aug. 29, 2023) (when a plaintiff has been apprised of the deficiencies in his complaint and put on "the plainest notice of what was required," but has still not alleged any facts that plausibly state a claim for relief, dismissal without leave to amend is appropriate); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend").

### B. Municipal Liability

The Court previously apprised Plaintiff that to hold a municipal entity liable in a § 1983 action, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town*

9

*of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks omitted); *see also Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.").

Plaintiff has not alleged that any conduct by medical personnel at ECMC occurred pursuant to an official custom or policy of Erie County. Although a "persistent and widespread" practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law" may equate to an official custom or policy, *Ruiz v. City of New York*, No. 14-cv-5231, 2015 WL 5146629, *11 (S.D.N.Y. Sept. 2, 2015), Plaintiff's allegation that "it is [a] well known fact that the hospital [prioritizes] treating the general public over state prisoners," ECF No. 6 at 17, ¶ 45, falls short. To adequately plead a persistent and widespread practice, a plaintiff must plausibly allege similar incidents involving others. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015) (summary order) (affirming dismissal of *Monell* claim and noting, "other than the plaintiff, the amended complaint provides only one additional example of a similar incident"). Plaintiff has not done so. The Amended Complaint contains only Plaintiff's conclusory remark that ECMC prioritizes treating the general public over state prisoners. *See* ECF No. 6 at 12, ¶ 24; 17, ¶ 45. Plaintiff therefore has not adequately pleaded a policy or custom arising from delivery of medical care at ECMC. Because the Court previously apprised Plaintiff of the elements required to plead a municipal liability claim and pointed out the deficiencies in his pleading, dismissal of this claim is without leave to amend. *See Williams*, 2023 WL 5584345, at *3.

## ORDER

IT HEREBY IS ORDERED that the claims against Intake Nurse, Dr. Doe, and Erie County are dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; the Clerk of Court shall terminate Intake Nurse, Dr. Doe, and Erie County from the action; and it is further

ORDERED that Plaintiff's Amended Complaint, ECF No. 6, will proceed to service upon CO Doe [1] and CO Doe [2] (once identified); and it is further

ORDERED that pursuant to 42 U.S.C. § 1997(e)(g)(2), CO Doe [1] and CO Doe [2] are directed to answer the operative pleading upon service; and it is further

ORDERED that pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), the Court requests that the Attorney General's Office ascertain the full names of CO Doe [1] and CO Doe [2].[2] The Attorney General's Office is also requested to provide an address where the Defendants can currently be served. The Attorney General's Office need not undertake to defend or indemnify these individuals at this juncture. This order merely provides a means by which Plaintiff may name and properly serve the Defendants as instructed by the Second Circuit in *Valentin*. The Attorney General's Office is hereby requested to produce this information within **30 days of entry of this Order**. Once this information is provided, Plaintiff's Complaint shall be deemed amended to reflect the full names of the Defendants, summons shall issue, and service is directed without further order; and it is further

ORDERED that the Clerk of Court is directed to send a copy of this order to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office, at Ted.O'Brien@ag.ny.gov; and it is further

---

[2] Correction Officers involved in Plaintiff's transfer from Five Points Correctional Facility to Orleans on October 28, 2022. *See* ECF No. 6 at 10-11.

ORDERED that Plaintiff shall notify the Court in writing if his address changes. The Court may dismiss the action if Plaintiff fails to do so.

SO ORDERED.

Dated: November 6, 2023
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York