UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAWANZA ALEXANDER,

v.                                                               23-CV-06168-FPG

                                                                 DECISION & ORDER

OFFICER ROBERT BROWN &
OFFICER DYLON ECKERT

                          Defendants.
_____

# INTRODUCTION

*Pro se* Plaintiff Dawanza Alexander brings this civil rights action against Defendants Officer Robert Brown and Officer Dylon Eckert pursuant to 42 U.S.C. § 1983. Plaintiff alleges deliberate indifference to his serious medical needs. ECF No. 6. Defendants move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 13. Plaintiff opposes the motion. ECF Nos. 14, 16. For the reasons that follow, Defendant's motion is GRANTED, and Plaintiff's complaint is DISMISSED WITH PREJDUICE.

# LEGAL STANDARD

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual

1

allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

For purposes of a motion to dismiss, a complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). The Court may also review any "documents that plaintiff[ ] either possessed or knew about and upon which [he] relied in bringing the [action]." *Id.*

## BACKGROUND

According to the complaint, on March 27, 2022, Plaintiff was incarcerated at Five Points Correctional Facility and was told by staff that he was being transferred to another facility. ECF 6 at 10. At that time, he was authorized to self-carry cardiac medication that helped keep his stents open. *Id.* As directed, on March 28, 2022, he reported to the "draft room" with his self-carry medication so he could be transferred. *Id.* When he arrived at the room, he was told to give his medication to an unidentified corrections officer ("C.O. Doe #1"). *Id.* Plaintiff objected numerous times, but another unidentified corrections officer ("C.O. Doe #2") made it clear that the Plaintiff could not possess the medication. *Id.*

Plaintiff was then transported to Orleans Correctional Facility. *Id.* at 11. Upon arrival, he requested his medication but was told that the facility had not received any medication for him. *Id.* He alleges that the new facility did not have his medication because Defendants failed to provide it. *Id.* Plaintiff maintains that he alerted C.O. Doe #2 to the seriousness of the matter and told him that without his medication he could experience pain or even die. *Id.* Further, Plaintiff told C.O. Doe #2 about his medical condition and that his medication was necessary to prepare for surgery. *Id.* Nevertheless, Plaintiff contends that he went the whole day without his medication. *Id.*

As of October 30, 2022, Plaintiff alleges that he still had not received his medication and that he began to have severe chest pain. *Id.* Plaintiff was taken to Medina Hospital and then transferred to Erie County Medical Center ("ECMC"). *Id.* At ECMC, Plaintiff told the intake nurse that he believed that his chest pains were due to the facility's failure to provide him with his medication. *Id.* at 12. While at ECMC, Plaintiff alleges that he remained in a great deal of pain and that there was a delay in his treatment. *Id.* He was also dissatisfied with the treatment he received and alleges that his treating doctor acted negligently. *Id.* at 14.

On November 3, 2022, Plaintiff was transferred to Buffalo General Hospital, where he was to have surgery to check the arteries where the stents were placed. *Id.* However, Plaintiff alleges that the surgeon determined that due to the long period of time that Plaintiff had gone without his medication, the arteries had "completely collapsed encasing the stents in the flesh, like a cocoon, which cuts off all and any blood flow to the heart." *Id.* As a result, the doctor determined that there was nothing further he could do, and that no other procedure could help the condition. *Id.* Plaintiff filed a grievance with Orleans Correctional Facility related to the denial of medication and his treatment at ECMC.[1] ECF No. 1 at 19–22. However, he did not appeal the grievance after it was granted in part and denied in part. ECF No. 6 at 7. Plaintiff remains incarcerated at Orleans Correctional Facility. *Id.* at 2.

---

[1] In the amended complaint, Plaintiff cites the grievance number as ORC-0066-23. *See* ECF No. 6 at 13. However, Defendants attached a copy of grievance ORC-0066-23 to their motion, which shows that complaint ORC-0066-23 was related to Plaintiff's request for nicotine patches. ECF No. 13-3 at 1. In his initial complaint, Plaintiff attached a copy of a grievance complaint, numbered ORC-0069-23, which was related to his denial of medication and concerns about his treatment at ECMC. ECF No. 1 at 19. Because Plaintiff alleges that his grievance was related to ECMC's inadequate treatment in his amended complaint, the Court presumes that he is referring to ORC-0069-23 in the amended complaint, but mistakenly listed the number as ORC-0066-23. *See* ECF No. 6 at 13. Further, while Plaintiff did not attach grievance ORC-0069-23 to his amended complaint, it qualifies as a document he "either possessed or knew about and upon which [he] relied in bringing the [action]." *Rothman*, 220 F.3d at 88. Therefore, the Court considers it a part of plaintiff's pleading for purposes of the instant motion to dismiss.

On March 22, 2023, Plaintiff brought the present action in this Court. ECF No. 1. He then amended his complaint on August 21, 2023. ECF No. 6. In his amended complaint, Plaintiff brought claims for deliberate indifference to his serious medical needs against C.O. Doe #1, C.O. Doe #2, the ECMC intake nurse, and the ECMC treating doctor. *Id.* He also brought a municipal liability claim against Erie County. *Id.* After the Court screened the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, only the claims against C.O. Doe #1 and C.O. Doe #2 remain. ECF No. 7. Pursuant to the Court's *Valentin* order, ECF No. 7, these officers have been identified as Robert Brown and Dylon Eckert. ECF No. 9.

## DISCUSSION

Defendants Brown and Eckert move to dismiss Plaintiff's claim pursuant to Rule 12(b)(6). ECF No. 13. They argue that Plaintiff's complaint should be dismissed because Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and failed to state a claim for deliberate indifference in his complaint. *See* ECF No. 13. For the reasons discussed below, the Court concludes that Plaintiff did not exhaust administrative remedies prior to the filing of this lawsuit and thus his amended compliant must be dismissed. Because the amended complaint is dismissed for failure to exhaust, the Court does not discuss Defendants' other argument.

The PLRA requires a "prisoner confined in any jail, prison, or other correctional facility" to exhaust all available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 578 U.S. 632 (2016) (holding that exhaustion is "mandatory"). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*,

4

534 U.S. 516, 532 (2002)). A prisoner must utilize the available grievance procedures, "regardless of whether the relief sought is offered through those procedures." *Espinal*, 558 F.3d at 124 (citation omitted); *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012). Thus, to properly exhaust administrative remedies, a prisoner must use "all steps that the [government] agency holds out." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). He also must comply with the facility grievance "system's critical procedural rules," *Woodford*, 548 at 95, including time limits. *Hill v. Curcione*, 657 F.3d 116, 124 (2d Cir. 2011).

There is no question that the PLRA requirements apply to Plaintiff's circumstance because Plaintiff is an inmate at a New York State prison claiming deliberate indifference to his medical needs while incarcerated. *See* ECF No. 6. Therefore, he must have exhausted administrative remedies prior to filing this suit. Failure to exhaust is an affirmative defense under the PLRA, and, as such, Defendants bear the initial burden of establishing that a grievance process exists. *Brooks v. Mullen*, No. 14-CV-6690, 2020 WL 2512868, at *2 (W.D.N.Y. May 15, 2020). Here, Defendants met this burden by citing the inmate grievance process outlined in N.Y. Comp. Codes R. & Regs. tit. 7, § 701, which applies to all prisoners in a New York State correctional facility, such as Orleans Correctional Facility.[2] Under § 701, there is a three-step process to resolve inmate grievances. N.Y. Comp. Codes R. & Regs. tit. 7, § 701. This process "requires the inmate to: (1) file a complaint with the Inmate Grievance Review Committee … ; (2) appeal to the facility superintendent; and (3) appeal to the [Department of Correctional Services] Central Office Review Committee." *Hernandez v. Coffey*, No. 99 Civ. 11615, 2003 WL 22241431, at *3 (S.D.N.Y. Sept. 29, 2003).

---

[2] Further, Plaintiff's initial complaint (ECF No. 1) included as an exhibit his grievance filed with the prison and the prison's response. These documents confirm the existence of the inmate grievance process. *See* ECF No. 1 at 19–22.

The PLRA requires that a prisoner exhaust all steps of the administrative remedy process. *See Amador*, 655 F.3d at 96. Therefore, in the instant case, for Plaintiff to have met the PLRA's exhaustion requirement, he would have needed to file a complaint with the Inmate Grievance Review Committee, then appeal the decision to the facility superintendent, and finally appeal that decision to the Central Office Review Committee prior to the filing of this case. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.

Here, there is no dispute that Plaintiff failed to exhaust all of the steps in the administrative remedy process. Plaintiff's amended complaint uses the Court's *Pro Se* Civil Rights Prisoner Complaint form. ECF No. 6. On the form, when asked if he filed a grievance, he selected "Yes." *Id.* at 7. When asked what the result of his grievance was, he put "DENIED IN PART, GRANTED IN PART." *Id.* But when asked what steps he took to appeal the decision, he put "NO APPEAL." *Id.* Because Plaintiff concedes that he did not appeal the decision, the Court concludes that he has failed to exhaust administrative remedies.

As Plaintiff has failed to exhaust administrative remedies, the Court must consider whether his non-exhaustion is excused. Under the PLRA, the only excuse for non-exhaustion is that the administrative remedy was unavailable. *Ross*, 578 U.S. at 642. Generally, there are three circumstances where an administrative remedy is considered unavailable: (1) when it operates "as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. In this case, it cannot be said that the grievance process was incapable of use or that prison administrators thwarted Plaintiff from taking advantage of the process, because Plaintiff filed a grievance with

the prison and received a response. *See* ECF No. 1 at 19–22. His grievance was also granted in part, demonstrating that the process is not a simple dead end. *See id.* at 22. Further, the appeals process was clearly identified on the response Plaintiff received. The response form includes a section explaining that if an inmate wants to appeal, he needs to check the appropriate box on the form and return it to the office within seven days. *Id.* However, Plaintiff did not appeal the decision. ECF No. 6 at 7. Therefore, because administrative remedies were available, the Court concludes that the Plaintiff's failure to exhaust is not excused.

As administrative remedies were available to Plaintiff and he concedes that he did not appeal the grievance, Plaintiff has not satisfied the PLRA's exhaustion requirement. While failure to exhaust is an affirmative defense and thus, plaintiffs generally need not plead it in their complaint, a court may dismiss a complaint under Rule 12(b)(6) if non-exhaustion is clear from the face of the complaint. *Williams v. Prianto*, 829 F.3d 118, 122 (2d Cir. 2016). In the instant case, for the reasons discussed above, the Court concludes that Plaintiff's failure to exhaust is clear on the face of the complaint.

As failure to exhaust administrative remedies "'is often a temporary, curable procedural flaw,' the Second Circuit has recognized that dismissal without prejudice is often appropriate where the prisoner can 'cure the defect simply by exhausting [his remedies] and then reinstituting his suit.'" *Hickman v. City of New York*, No. 20-CV-4699, 2021 WL 3604786, at *4 (S.D.N.Y. Aug. 12, 2021) (quoting *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004)). However, in this case, Plaintiff cannot cure his failure to exhaust administrative remedies. Under § 701, the time limit for filing an appeal is at most forty-five days after Plaintiff received the response from his initial grievance. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g). Plaintiff received the response to

7

his grievance on February 8, 2023, and thus would have needed to appeal by March 25, 2023. He failed do so and therefore, the amended complaint must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 13, is GRANTED, and Plaintiff's Amended Complaint, ECF No. 6, is DISMISSED WITH PREJUDICE. Plaintiff's request to direct the Marshal to provide proof of service of the complaint and request for a briefing schedule for a possible Motion for Summary Judgment (ECF No. 14) are DENIED AS MOOT. Plaintiff's request for a printed copy of the docket is GRANTED and the Clerk of Court is directed to mail a copy of the docket and a copy of this Decision and Order to Plaintiff. The Clerk of Court is also directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 13, 2024
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York